WILL OF DERRICKSON : Dow and others, Appellants, vs. HAMILTON and others, Respondents.

*April 26—May 14, 1912.*

*Wills: Construction: Legacies.*

A will (1) provided that testator's debts be paid; (2) gave $1,000 to his daughter or, if she predeceased him, to her children; (3) directed the sale of all testator's real estate and personal property and that out of the proceeds thereof, after the payment of debts and expenses of administration, the executor "pay the legacies hereinafter named;" (4) directed the executor to pay specific sums to persons named, including children of the daughter named in the second paragraph; (5) provided: "In case the proceeds of my estate are not sufficient to pay all of said legacies in full, the shortage shall be borne by all in proportion to their respective legacies, and if said estate is more than sufficient to pay said legacies, said legatees shall share the same in proportion to their respective legacies." *Held*, that the fifth paragraph refers to all legacies given by the second and fourth paragraphs, not merely to those given by the fourth paragraph. MARSHALL, J., WINSLOW, C. J., and VINJE, J., dissent.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Thomas P. Derrickson died December 9, 1909, leaving a will of which the portions involved in this proceeding are as follows:

"Second. I give and devise to my daughter, Elizabeth Hamilton, the sum of one thousand dollars, and in case she dies before I do, I will that said sum of money shall go to her children in equal shares.

"Third. I will and request that my executor sell all of my real estate and personal property of which I die seized, and out of the proceeds thereof and after all my debts and expenses of administration are paid, that said executor pay the legacies hereinafter named.

"Fourth. My executor shall pay to *Leon Dow,* of Aubrey, the sum of two hundred dollars; to *Jessie Hamilton,* of Aubrey, the sum of three hundred dollars; to *Harriet E. Dow,* of Aubrey, the sum of one thousand dollars; to George Harring, of Wood county, Wisconsin, the sum of three hundred dollars; to *Nellie Harring,* of Cincinnati, Ohio, the sum of five hundred dollars; to *Audley Hamilton,* of Aubrey, the sum of one hundred dollars; to *Ethel Hamilton,* of Aubrey, the sum of two hundred dollars; to *Ione Hamilton,* of Aubrey, the sum of two hundred dollars; to my daughter, Emma Ostrander, the sum of five hundred dollars.

"Fifth. In case the proceeds of my estate are not sufficient to pay all of said legacies in full, the shortage shall be borne by all in proportion to their respective legacies, and if said estate is more than sufficient to pay said legacies, said legatees shall share the same in proportion to their respective legacies."

· Elizabeth Hamilton, named in the second clause of the will, was a daughter of Thomas P. Derrickson. She died May 28, 1905, twenty-five days after the execution of the will. *Jessie Hamilton, Audley Hamilton, Ethel Hamilton,* and *Ione Hamilton,* mentioned in the fourth clause of the will, are children of Elizabeth Hamilton.

After the payment of all the legacies mentioned in the will there remains a surplus of over $9,500.

The county court entered a judgment construing the will, holding that the children of Elizabeth Hamilton would take shares in the surplus under the second clause of the will, and that the legatees named in the second and fourth clauses of the will were in the same class and were all alike included in the distribution provided by the fifth clause of the will. Final judgment was also made by the county court distributing the estate in accordance with the construction previously given.

Upon appeal to the circuit court a judgment was awarded affirming the judgment of the county court and making dis-

tribution of the surplus as had been made by the county court. This is an appeal from such judgment.

*Elbert E. Brindley,* for the appellants.

*Vroman Mason,* for the respondents, as to the significance of the word "said" in the fifth paragraph of the will, cited *Richards v. Koenig,* 24 Wis. 360, 364; 2 Bouv. Law Dict. 942; *Brown v. State,* 28 Tex. Ct. App. 379, 13 S. W. 150, 151.

SIEBECKER, J.    The county court and the circuit court on appeal were of the opinion that the testator intended in the fifth clause of the will to include all legacies theretofore named in the second and fourth clauses of the will.    The language of the fifth clause clearly refers to all of the testator's estate, for he says, "In case the proceeds of my estate are not sufficient to pay all of said legacies in full," then "the shortage shall be borne by all in proportion to their respective legacies."    There certainly can be no question that the legacy to Elizabeth Hamilton, bequeathed in the second clause, was to be paid out of "the proceeds" the testator had in mind when he spoke of "the proceeds of my estate" in the provisions of the fifth clause.    This being true, it follows as a matter of course that the phrase in the same sentence, "all of said legacies," of necessity, refers to and includes all of the legacies referred to in the fifth clause, which he intended should be paid out of "the proceeds of my estate."    These ideas inhere in and are part of the plain and natural signification of the words the testator used in expressing his will in this provision, and hence no occasion is presented for giving them a different meaning, unless it be that other parts of the will necessarily conflict therewith and call for a different interpretation of them.    An examination of the other clauses, however, discloses that their contexts are in complete harmony with this meaning of clause 5.

It is, however, claimed that the fifth clause refers only to the class of legatees created by clause 4 and that the contexts

of clauses 2 and 4, in connection with their separation in the will by clause 3, as well as the separate provision for his daughter Elizabeth, contained in clause 2, show a clear intent to create two classes of legatees by clauses 2 and 4. But wherein does the context of clause 3, directing the executor to sell testator's real and personal property and out of the proceeds to pay his debts, expenses of administration, and "the legacies hereinafter named," evince any intent to restrict the natural meaning of the words employed in clause 5? True, the proceeds were to be applied in payment of the legacies created in clause 4, but the legacy in clause 2 must also be paid, and whence, if not out of the proceeds realized on a sale of his real and personal property, referred to in clause 3?

Again, it is argued: If it was the testator's intent to make one class of legatees, why did he create it in two separate clauses? And it is argued: Would he not with such intent in mind have put them all in clause 4? While he might have done so, he chose this different way, and if this, his way, is a proper way, we must respect and follow it. The fact that he chose this form and adopted it to express his will suggests no reason, purpose, or intent to give a meaning to clause 5 different from what the words naturally mean when applied to the facts and circumstances which occupied his mind in making a will.

We are persuaded that the will is plain and unambiguous and that the construction contended for by the appellants is conjectural and would modify the testator's will so as to change his intention and understanding as expressed therein. It is considered that the county court and the circuit court gave a correct interpretation to the will and entered the proper judgment in the case.

*By the Court.*—Judgment affirmed.

MARSHALL, J. (*dissenting*). I cannot agree with the result reached in this case. As I read the will it is perfectly manifest that subdivision 5 refers only to subdivision 4. The

writing seems too clear to be regarded open for construction. A mere reading thereof is sufficient to give emphasis to this. I requote the instrument:

"First. I desire that all my just debts be paid in full.

"Second. I give and devise to my daughter, Elizabeth Hamilton, the sum of one thousand dollars, and in case she dies before I do, I will that said sum of money shall go to her children in equal shares.

"Third. I will and request that my executor sell all of my real estate and personal property of which I die seized, and out of the proceeds thereof and after all my debts and expenses of administration are paid, that said executor pay the legacies hereinafter named.

"Fourth. My executor shall pay to *Leon Dow,* of Aubrey, the sum of two hundred dollars; to *Jessie Hamilton,* of Aubrey, the sum of three hundred dollars; to *Harriet E. Dow,* of Aubrey, the sum of one thousand dollars; to George Harring, of Wood county, Wisconsin, the sum of three hundred dollars; to *Nellie Harring,* of Cincinnati, Ohio, the sum of five hundred dollars; to *Audley Hamilton,* of Aubrey, the sum of one hundred dollars; to *Ethel Hamilton,* of Aubrey, the sum of two hundred dollars; to *Ione Hamilton,* of Aubrey, the sum of two hundred dollars; to my daughter, Emma Ostrander, the sum of five hundred dollars.

"Fifth. In case the proceeds of my estate are not sufficient to pay all of said legacies in full, the shortage shall be borne by all in proportion to their respective legacies, and if said estate is more than sufficient to pay said legacies, said legatees shall share the same in proportion to their respective legacies. . . . "

Thus it will be seen that the testator bequeathed $1,000, without qualification, to his daughter; evidently supposing it would be satisfied without selling any of his realty or personalty. Next he directed such property to be turned into money and specific sums to be paid to particular persons, not naming the daughter. Again indicating, unmistakably, I venture to say, that he supposed she would be provided for without converting personalty and realty into money. These specific bequests, it will be noted, follow the language "pay the legacies hereinafter named." Thus emphasizing the idea before and

after expressed that "said legacies" were treated as wholly apart from the positive bequest to the daughter. The fourth treated the numerous bequests mentioned as a group, each being of equal grade with the rest and all being denominated as "legacies." Then follows the fifth subdivision directing what should be done in case of the proceeds of the estate not being sufficient, or more than enough, "to pay all said legacies in full." Do not the words "said legacies" thus point straight to the words "the legacies" in the preceding subdivision? It seems so; that the whole will is in perfect harmony therewith; that any other reading violates both the letter and spirit of the instrument and, in effect, judicially makes a will which the testator never thought of making.

Winslow, C. J., and Vinje, J. We concur in the foregoing dissenting opinion of Mr. Justice Marshall.

On June 19, 1912, the mandate was amended so as to provide that the costs be taxed and paid out of the estate.